Huefin, Judge.
 

 As a surety cannot maintain an action against his principal merely upon the rendering of a judgment against the former, it was material and nr-
 
 *255
 
 cess ary that the plaintiff in this case should show a Satisfaction of the judgment by a payment made by himself. To make that fact appear; he proved that he deposited the money with a friend, to be' delivered to the original creditor, with express directions not to pay it in discharge and satisfaction of the judgment, but to take an assignment thereof, for the purpose of keeping it in force against the defendant. The agent complied with the instructions, and took from
 
 McArthur
 
 an assignment to himself, in trust for the plaintiff. This transaction was'held in the Superior Court to be a payment. This court entertains a different opinion. There was no satisfaction of the judgment acknowledged of record; no release of it; nor any receipt of money as and for a payment of it. No payment was intended. Both the testimony of the witness and the deed of assignment prove, that the contrary was intended. The question then is, whether, against the intention of the parties, the payment shall be deemed to he in satisfaction, because the money belonged to one of the defendants in that suit. We think not. It is a common mode, whereby a surety indemnifies himself. He may relinquish it by making payment in satisfaction. But he may make the payment, not in satisfaction, and take an assignment. If the surety is not a party to that suit,. he may take the assignment to himself. This is generally done by ari indorser, who is not sued jointly with the maker. It is greatly for the benefit of sureties that it should he so
 
 ;
 
 for many of the rights of the surety are secured only through this principle of subrogating ■him to the securities of the creditors, and entitling him to an assignment of them. Hence, if the creditor does any act which puts it out of his power to make an assignment to the surety, the latter is discharged. By taking an assignment, the judgment is preserved, and satisfaction may be obtained from the principal by immediate process ; which is of great consequence in a case of insolvency ortho death of the principal. If the judgment be joint against the surety and the principal, the former does not thereby lose his right to an-assignment. If he did, all claim to the benevolence of the creditor
 
 *256
 
 would fall with it. He cannot indeed take the assign-, mcnt, in that case, to himself, for that would be an extinction of the judgment. But he may take it to another person. In law, the plaintiff .alone is the owner of the debt. The assignee can act in his name alone. And a
 
 court
 
 of law can take
 
 no
 
 notice of the trust, upon which the assignee or the plaintiff keeps up the judgment. But if we could, we would not make the legal right unite with that of the
 
 cestui que trust.
 
 It is like the owner of an inheritance taking a conveyance to a trustee of an outstanding satisfied term. . The interposition of the trustee keeps the legal and equitable estates apart, Oven in equity— much more at law.
 

 
 *255
 
 ’ To enable a surety to recover for money paid to the use of his principal, he must prove an actual payment in satisfaction of the debt.
 

 In order to get the benefit of the security, upon payment of the debt, he must have it assigned to a trustee; or if bound collaterally, he may take the assignment directly to himself.
 

 If an assignment of the security is taken, the surety may have his redress upon it immediately in the name of the creditor.
 

 
 *256
 
 But while it is in force, the -sbrety cannot maintain an action for the money paid for the assignment.
 

 An executor cannot retain his commissions against a creditor or a legatee, until they have been allowed by the County C’rt, or in a suit for the settlement of •his accounts. They cannot be allowed by a jury upon the plea of fully administered.
 

 There is no doubt that
 
 McJlrlhnr
 
 may yet acknowledge satisfaction of record, or the assignee may do it in his name, provided the terms of the assignment authorize it. But until that be done, or the judgment be otherwise discharged, in such wise as to bar a suit on it at law, it remains in force. While it does, the surety cannot maintain an action, of which thesis is the satisfaction of that judgment.
 

 This opinion venders it unnecessary to decide the other questions. But there is one of them of very general'consequence, which may frequently occur, on which all the judges entertain a clear opinion, xlifferent from that given in the Superior Court, which we think it proper to express. It relates to the commissions of the executor. We think the acts of 1715, 1723 and 1799, taken together, clearly contemplate that commissions, to be retained against a creditor or legatee, (which Were not chargeable at all at common law,) must be allowed
 
 by the court.
 
 before which the executor is to return an account of his administration, or in which is pending a suit directly for the settlement of those accounts. A just allowance can he made only upon an examination of the accounts. It is impossible that a jury can, in this collateral way, have the information necessary to a proper estimate. Besides there is another reason of policy which forbids it. The account current is to be returned on the oath of the éxetor. It is frequently important evidence for the credit-
 
 *257
 
 or upon the issue of fully administered. The administration is often within the knowledge of-the executor alone. In England, he may at any time be summoned by the creditor before the ordinary to render his account, which, the'creditor uses as evidence in the suit at law. Here the only method we have of obtaining such an account is to withhold the allowance of commissions, until it be returned. The refusal of them, until expressly allowed by the court, will make it the interest of the executor to do his duty, and make fair disclosures. The rule can.never be of any importance, except in the case of estates alleged to be insolvent. Whenever that is alleged by the executor, he must of necessity be prepared to exhibit his accounts ; for when the estate is exhausted, he has nothing further to administer, and must be ready to return the account current. ¥c think therefore, that an executor in default, in not making his return, is not entitled to retain for commissions at the discretion of a jury. They only form a charge against the estate, when specifically allowed by the court upon the settlement of the estate.
 

 'Wherefore the judgment must he reversed, and judgment ( according to the agreement of the parties in the record) of nonsuit entered.
 

 -Per Curiam.' — Judgmest reversed.